**John E. MOORE, Petitioner,**

v.

**Jack R. DUCKWORTH, Warden, Respondent.**

**No. S 83–313.**

United States District Court, N.D. Indiana, South Bend Division.

Feb. 6, 1984.

John E. Moore, pro se.

Linley E. Pearson, Atty. Gen. of Indiana, Kermit E. Hilles, Deputy Atty. Gen., Indianapolis, Ind., for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This application for federal habeas relief was filed pursuant to 28 U.S.C. § 2254. Jurisdiction over the claims presented is predicated on a federal question under 28 U.S.C. §§ 1331, 2241. In accord with the dictates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the complete state court record has been filed with, and carefully examined by, this court. Both sides having briefed their respective positions, this matter is now ripe for ruling.

The petitioner, an inmate at the Indiana State Prison in Michigan City, Indiana, was convicted in a state court jury trial of second-degree murder, for which he received an indeterminate sentence of life imprisonment. On direct appeal to the Supreme Court of Indiana, his conviction was affirmed. *Moore v. State*, Ind., 414 N.E.2d

558 (1981). Petitioner now seeks federal habeas review of his conviction.

Before reaching the merits of petitioner's application for a writ of habeas corpus, this court must first address itself to respondent's argument that petitioner has failed to exhaust his available state court remedies.

Respondent contends that one of the issues raised by petitioner was not fairly presented first to the state court. Petitioner disagrees.

 It is axiomatic that all claims raised in a federal habeas petition must first have been presented to the state courts, i.e., the state courts must have had a prior, fair opportunity to address them. 28 U.S.C. § 2254(b); *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). Where such has not occurred, these "unexhausted" issues render the entire petition defective, and mandate its dismissal. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

 Here, petitioner raises as one of his issues the argument that there was insufficient evidence on his claim of self-defense, an argument the respondent contends was neither presented to, nor addressed by, the Indiana courts. However, an examination of the Supreme Court of Indiana's opinion, particularly Justice DeBruler's dissent, indicates that the issue was at least acknowledged by the Court, if not squarely addressed. Further, it must be borne in mind that this court is here dealing with a *pro se* inmate litigant with an inability to frame pleadings as this court would expect of a private attorney. Accordingly, it appearing that the State of Indiana did have a fair opportunity to address this issue beforehand, this court turns now to an examination of all of the issues raised.

The issues raised by petitioner in this action are as follows:

1. There was insufficient evidence presented to sustain the conviction;

2. The trial court improperly admitted evidence of a prior assault by the petitioner on the victim;

3. The trial court improperly admitted into evidence a coroner's photograph of the body of the victim, i.e., it was unnecessarily inflammatory; and,

4. Two of petitioner's proffered jury instructions were improperly denied by the trial court.

Each issue will be addressed in its turn.

### I.

 The standard to be used in federal habeas review of sufficiency claims is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Review of the record is to be taken in light of the facts "most favorable to the prosecution". *Id.* So long as the record establishes that a rational fact finder could readily have found the petitioner guilty under state law, then the conviction will be sustained. *Id.*

In reviewing the evidence presented at trial, the Supreme Court of Indiana summarized it as follows:

A summary of the facts from the record most favorable to the state shows that defendant was separated from his wife, Glenda Rice Moore. Mrs. Moore was living at the home of her mother, Odessa Rice. On January 27, 1977, an Indianapolis police officer was directed to Mrs. Rice's address by a radio report of a man with a knife. The officer, Terry Boyer, testified that he saw defendant holding a knife to his estranged wife's throat and then saw him beating her with his fists. Boyer was finally able to stop defendant and handcuff him.

About two months later, on March 14, 1977, defendant came to Mrs. Rice's home. He attempted to talk to Glenda Moore when she came out of the house and crossed the street to get into a car. Moore said that there was nothing to talk about. Mrs. Rice was on the porch and saw defendant pull a gun and fire at his wife. Moore put her hand up to her face and exclaimed, "Oh, John. You shot me!" She threw down her purse and

keys and ran down an alley. Defendant ran after her and fired more shots at her.

When police arrived, they found a group of people gathered in the alley and defendant's wife lying on the ground dead. An autopsy disclosed that she had been hit by two gunshots. One wound was across the bridge to the nose and right side of the face. A second shot, which was the cause of death, had penetrated the left side of her body, going entirely though the heart and right lung. *Moore v. State, supra* at 559

Defendant finally contends that the verdict is not supported by sufficient evidence. He testified in his own defense that he was afraid of his wife because she always carried a gun. He testified that he shot at his wife in order to scare her and not to kill her. He further testified that a third person was in the alley behind him and fired the fatal shot. This testimony was contradicted by the victim's mother who testified that she did not see any gun in her daughter's hands. She testified that her daughter:

> "threw her pocketbook and her keys down and she started runnin' and he started runnin' behind her, still steady shootin' at her. And she said, 'Oh don't kill me. Don't kill me, John! You've already shot me, but please don't kill me.' And he just steady, steady shootin'."

Another witness testified that he did see a third person in the alley but did not see another gun.

Ind., 414 N.E.2d at 559, 560.

■ The jury was instructed that, in regard to self-defense, "a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury ..." *Moore v. State, supra*, at 560. Petitioner's testimony that he chased Glenda down the alley while continuing to fire even though he was no longer in fear for his life is sufficient to negate the theory of self defense.

Turning now to an examination of the state court record, this court finds the following.

Petitioner's testimony about the incident was that he believed his wife was carrying a gun in her purse even though he did not see a gun (R. 200–201, 207.5–209). He admitted to having shot Glenda in the nose (R. 200) and to chasing Glenda down the alley, continuing to fire at her (R. 200–201) even though he was no longer in fear for his life (R. 209). Petitioner claimed that another person in the alley, Sylvester (Silky) Ross, fired the fatal shot and that petitioner and Ross then exchanged shots (201–202, 209–213). Another defense witness, Paul Smith, testified that, while he saw Sylvester Ross at the scene, he did not see anyone follow Glenda up the alley other than the petitioner (R. 184–185). Odessa Rice testified that Sylvester Ross was at the scene of the shooting but that when the shooting took place Ross had backed away and got in the middle of the street in front of the house (R. 81–82), and that Ross did not follow the petitioner and the decedent into the alley (R. 97). The final shots were fired in an alley behind the house (R. 67–68, 93–85). Mrs. Rice also testified that she did not see anyone with a gun except the petitioner (R. 96), that she did not see anyone except the petitioner and the deceased in the alley (R. 103), and that the petitioner was never out of her sight (R. 104). Mrs. Rice also testified on re-cross examination that she did not see Ross fire a gun:

> Q. When John and Glenda ran down the alley did you see Silky crouch and fire his gun?
>
> A. No, I didn't. I only seen him standing in the middle of the street (R. 107–11.2–5).

■ Thus, looking at the evidence most favorable to the state, there can be no question that petitioner's self-defense claim and his claim that Ross fired the fatal shot had been rebutted. Further there can be no question that a rational fact finder could have found that the petitioner was guilty of the murder of Glenda Rice and that he did not act in self-defense.

## II.

■ The petitioner also asserts that the trial court erred in admitting evidence of a

prior assault by the petitioner upon the victim and in admitting a photograph of the victim into evidence. It has long been held that admissibility of evidence in a state trial does not normally raise federal constitutional questions unless it impinges on fundamental fairness or constitutes a denial of due process. *Carbajol v. Fairman,* 700 F.2d 397 (7th Cir.1983); *Nordskog v. Wainwright,* 546 F.2d 69 (5th Cir.1977); *Maglaya v. Buchkoe,* 515 F.2d 265 (6th Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1975); *Grundler v. North Carolina,* 283 F.2d 798 (4th Cir. 1960).

About two months before the murder of Glenda Rice, Terry Boyer, an Indianapolis Police Officer, observed John Moore holding a knife to Glenda's throat and beating her with his fist (R. 61–64). The Supreme Court of Indiana upheld the admissibility of this testimony on the grounds that evidence of prior threats or assaults upon the same victim is admissible in a murder trial as proof of malice and intent to kill. *Moore v. State, supra,* at 559.

A photograph of the nude upper torso of the victim was also admitted into evidence. Plaintiff contends that the photograph is shockingly inflammatory and should not have been admitted.

The fact that evidence admitted at trial shocks one's sensibilities does not, standing alone, violate due process. *Lisenba v. California,* 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941). Thus, appraisals of the probative and prejudicial value of evidence is entrusted to the sound discretion of the state trial court judge, and his appraisal, absent extraordinary circumstances, will not be disturbed. *United States v. MacDonald,* 688 F.2d 224 (4th Cir.), *cert. denied,* — U.S. ——, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983). *See also, generally, Carbajol, supra.*

The Supreme Court of Indiana upheld the admission of this photograph on the grounds that it was not unnecessarily gruesome and because it was illustrative of the testimony of the pathologist and tended to prove the cause of death. *Moore v. State, supra,* at 560. Further, this court's examination of said photograph leads to the conclusion that it is neither unconstitutionally gruesome nor inflammatory.

This evidence was properly admitted under state law and a review of the record establishes that the testimony of Officer Boyer and the admission into evidence of the photograph of the victim did not impinge upon the fundamental fairness of the trial or deny the petitioner due process. Accordingly, admission of this evidence does not raise a question upon which federal habeas relief can be granted.

### III.

Petitioner's last contention is that his trial was unfair because the trial court rejected two instructions on self-defense which were tendered by him. Instructions on state criminal law are a matter of state law and a state trial court's refusal to give an instruction does not raise an issue cognizable in federal habeas corpus proceeding unless it deprived petitioner of his right to a fair trial guaranteed by due process clause. *Linebarger v. State of Oklahoma,* 404 F.2d 1092 (10th Cir.), *cert. denied,* 394 U.S. 938, 89 S.Ct. 1218, 22 L.Ed.2d 470 (1968). *See also Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) ("Before a federal court may overturn a conviction resulting from a state trial, it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."). *Accord., see Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977).

In this case, the Supreme Court of Indiana held that the trial court's instructions regarding self-defense correctly covered all of the essential elements of self-defense and of the defendant's tendered instruction number 1. The Court also held that defendant's second tendered instruction included a statement that "the state had to establish beyond a reasonable doubt the absence of self-defense" for which proposition there was no precedent in Indi-

ana Law. *Moore v. State, supra,* at 560. The instruction given correctly summarized Indiana law, while petitioner's tendered instructions were redundant and improper. Thus, the failure to use the tendered instructions did not deprive petitioner of a fair trial.

Accordingly, and based on the above, it is now the ORDER of this court that the writ be DENIED and petition DISMISSED.