186 N.J. Super. 539 (1982)
453 A.2d 258
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DONALD ROCKHOLT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1982.
Decided November 18, 1982.
*541 Before Judges BOTTER, POLOW and BRODY.
Mark E. Roddy argued the cause for appellant (Goldenberg, Mackler & Sayegh, attorneys; Harry A. Goldenberg on the brief).
Daniel Louis Grossman, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of *542 New Jersey, attorney and Daniel Louis Grossman of counsel and on the brief).
The opinion of the court was delivered by POLOW, J.A.D.
Defendant Donald Rockholt was convicted of distributing methamphetamine (N.J.S.A. 24:21-19(a)(1) and (b)(3)), receiving a stolen Atlantic City police motorcycle (N.J.S.A. 2C:20-7(a)), misconduct in office in connection with the sale of the police motorcycle (N.J.S.A. 2C:30-2(a)) and receiving stolen police identification cards (N.J.S.A. 2C:20-7(a)). The conviction for receiving the stolen motorcycle was vacated and an aggregate sentence of eight years in State Prison was imposed. On this appeal defendant charges that N.J.S.A. 2C:2-12(b) of the Code of Criminal Justice is unconstitutional in that it places the burden to prove entrapment upon the defendant and that the instructions to the jury regarding entrapment were so improper, confusing and ambiguous as to warrant a new trial. In addition, defendant asserts trial court errors in rulings on evidence and in denial of defendant's motion to dismiss the official misconduct charge at the end of the State's case. Finally, he challenges the sentence imposed as "clearly excessive."
Defendant had been a member of the Atlantic City Police Department for almost nine years when he resigned in August 1980, following the events which culminated in his indictment and convictions. Two State Police undercover agents, unknown to Rockholt, approached him in the "My Way Lounge" in Atlantic City. Upon entering the lounge the detectives took note of defendant at the bar in his Atlantic City police uniform, since drinking on duty violates traditional police regulations.
The two undercover detectives were involved in "Operation Seashore" in Atlantic City. They were assigned to "get acquainted in the neighborhood and pose as buyers of stolen property" and to "let it be known that they were purchasing drugs." They engaged Rockholt in general conversation which soon turned to a discussion about motorcycles. According to *543 defendant, he was intoxicated at the time and the two strangers plied him with drinks. When Rockholt announced that he was a motorcycle officer, one of the detectives expressed his dream that "some day [he would] own a Harley." There is conflict in the testimony regarding whether defendant made the first offer to sell a police department motorcycle or the undercover men first offered to buy one. Ultimately, the conversation became serious and, after some negotiations, the price of $600 was agreed upon.
Rockholt met the two detectives in a vacant lot opposite the municipal garage shortly after midnight. After returning from the building defendant suggested that they meet him at the State Marina parking lot. Still in uniform, defendant delivered a police department motorcycle and accepted the $600.
According to Rockholt, the undercover agents must have known his desperate state of mind, his need for alcohol and drugs. He testified that "it's like starving to death and laying food in front of you, saying, `do this and you will have food.'" He insists that he was already intoxicated when they encountered him; that they persisted in supplying him with drinks, and that he only agreed to sell the motorcycle to obtain money for his drug habit.
About one month later the two detectives again encountered defendant, this time at the Night Owl Lounge in Atlantic City. After some general conversation the discussion again turned to stolen property. The testimony is conflicting with regard to who introduced the subject of obtaining blank police department identification cards. Ultimately, the detectives agreed to purchase five cards at $50 each. However, defendant was unable to produce the cards immediately. The detectives handed him a business card containing the address of a store where they could be reached. Rockholt appeared the next day and sold various I.D. cards and other stolen items, for which he received $440. The store was actually a front for the State Police "Operation Seashore" and the entire transaction with Rockholt which took place there was videotaped and played for the court and jury.
*544 The final transaction between Rockholt and one of the agents took place about five months later. Defendant appeared at the store and sold the agent 1.5 grams of "speed" for $90.
The fact that the transactions occurred is not denied. Rockholt's defense centered mainly on entrapment and his susceptibility because of his drug addiction and alcoholism for which he had entered a residential treatment facility prior to his first encounter with the undercover agents.
Under the New Jersey Code of Criminal Justice, entrapment is defined as law enforcement conduct which induces, encourages or causes "one not ready to commit it" to engage in commission of a crime.[1] The burden of proof of entrapment is to be borne by the defendant by a preponderance of the evidence. N.J.S.A. 2C:2-12(b). Rockholt perceives the latter provision as unconstitutionally shifting the burden of proof from the State. Relying on earlier case authority requiring that the prosecution bear the burden to show nonentrapment, he concludes that the issue is one of constitutional dimension.
Recent decisions identify two standards of entrapment, subjective and objective. The subjective, traditional defense of entrapment focuses on a defendant's mental state. It is present where there exists no predisposition to commit the offense but an otherwise innocent person is induced by law enforcement conduct to commit it. State v. Stein, 70 N.J. 369, 391 (1976); State v. Dolce, 41 N.J. 422, 430 (1964). The subjective standard *545 thus restricts the effectiveness of the defense of entrapment to those defendants not predisposed to commit the crime. State v. Molnar, 81 N.J. 475, 484 (1980). Objective entrapment focuses on the quality of police conduct  whether it was "so egregious as to impugn the integrity of a court," in which case "the predisposition of the defendant becomes irrelevant." Ibid; State v. Talbot, 71 N.J. 160, 167-168 (1976). The objective standard is premised on considerations of fundamental fairness. 71 N.J. at 168.
Since the entrapment provision of the new Criminal Code "focuses upon lack of criminal predisposition," it deals only with the subjective standard. State v. Molnar, supra, 81 N.J. at 486. In Molnar, although the issue was not raised, there was no concern expressed regarding the constitutionality of the provision imposing the burden of proof upon the defendant. Furthermore, in Molnar defendant's claim of amnesia as a mental disease or defect impairing his memory was recognized as an affirmative defense for which the burden of proof was properly imposed upon defendant. 81 N.J. at 491-492. Directly on point, the United States Supreme Court has specifically held that the defense of subjective entrapment is not of constitutional dimension. United States v. Russell, 411 U.S. 423, 433, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). We conclude that there is no basis for arriving at a different conclusion in this State.
Imposing on defendant the burden of proving entrapment does not relieve the State of its burden to prove every element of the offense charged beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Absence of entrapment is not an element of the offense; its presence relieves an accused of criminal responsibility despite proof by the State of all essential elements of the crime. The statute merely requires defendant to bear the burden of proving its existence by a preponderance of the evidence.
The courts of this State have long recognized the propriety of placing the burden of proving certain affirmative defenses upon a defendant, provided the State is not thereby relieved of *546 its obligation to satisfy all essential elements of the offense charged beyond a reasonable doubt. State v. Molnar, supra, 81 N.J. at 492. The same rationale was applied with regard to the defense of insanity under prior case law, State v. Lewis, 67 N.J. 47, 48 (1975), and remains applicable under the provisions of the Criminal Code, N.J.S.A. 2C:4-2. We are fully satisfied that the provision of the statute imposing upon defendant the burden of proving entrapment by a preponderance of the evidence is constitutionally sound.
In the commentary to the final revision of the Code the following statement appears with regard to the burden of proof provision, N.J.S.A. 2C:2-12(b):

The Burden of Proof: Subsection b. The Code places the burden of proof upon the defendant because the defense does not negative an element of the offense and does not "truly seek to excuse or justify a criminal act. The defense is, in fact, a complaint by the accused against the State for employing a certain kind of unsavory enforcement. The accused is asking to be relieved of the consequences of his guilt by objecting to police tactics. He is plaintiff and should be required to come forward with the evidence and to establish the main elements of his claim by a preponderance of proof." MPC T.D. 9, p. 21 (1959). This would change New Jersey law. Under State v. Dolce, supra [41 N.J. 422] at 432, entrapment is a "negative defense" meaning that the defendant has the burden of coming forward with some evidence to support the defense but, once having done so, the burden is upon the prosecution to prove, beyond a reasonable doubt, that he was not entrapped. [II New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission, Commentary at 78]

We conclude that the change in burden of proof is intended to apply to all defenses of entrapment, whether objective or subjective.[2]
Here, the record is totally devoid of any such egregious conduct by the State as would approach the "objective" standard of entrapment. At oral argument counsel was unable to demonstrate that the record could sustain such a defense. Hence, as a matter of law, there was no "objective" entrapment and that issue should not have been submitted to the jury. *547 Nevertheless, the judge included the following reference to "objective" entrapment, among others, in his charge:
If the law enforcement methods create the substantial risk that the offense will be committed by persons other than those who are ready to commit them, entrapment may exist, although the actor himself may have been predisposed. When official conduct inducing crime is so egregious or outrageous as to impugn the integrity of the judicial processes, predisposition of a defendant becomes irrelevant.
Although the "objective" standard issue should not have been included in the charge, in the circumstances of this case no prejudice resulted therefrom to defendant.
With regard to defendant's contention that the charge was erroneous and confusing, our review of the instructions to the jury given by the trial judge satisfies us that, taken as a whole, they are unobjectionable. State v. Freeman, 64 N.J. 66, 69 (1973). Although "objective" entrapment should have been ruled out as a matter of law, as already noted its inclusion was not prejudicial to defendant and was not plain error. See Perna v. Pirozzi, 182 N.J. Super. 510, 518 (App.Div. 1982).
Defendant also challenges the ruling of the trial judge permitting certain portions of the video tapes to be replayed. The right to a voir dire hearing on the admissibility of the tapes pursuant to State v. Driver, 38 N.J. 255 (1962), was waived by counsel for defendant. Although the judge refused to permit the entire tape to be replayed, he did allow portions to be replayed for clarification. A trial judge is given wide latitude with regard to the repetition of evidence. We discern no abuse of discretion which would justify disturbing such a ruling on appeal. State v. Conklin, 54 N.J. 540, 545 (1969).
Defendant challenges the trial judge's refusal to dismiss the misconduct in office charges at the conclusion of the State's case. He asserts that his drug addiction and alcoholism were so severe that he was unable to function as a police officer and thus could not commit misconduct in office. However, his stated authority, State v. Penta, 127 N.J. Super. 20 (Law Div. 1974), certif. den. 68 N.J. 166 (1975) is inapposite. In Penta a councilman-elect who had not yet been sworn in was determined *548 to be outside the purview of the misconduct in office statute. Id. at 206. Here, defendant was a police officer, had been sworn in office and remained continuously in office until he resigned after the offenses had been committed. He was a "public servant" at the time of the conduct for which he was convicted. N.J.S.A. 2C:30-2.
We have examined the trial judge's comments to which defendant takes objection and note that portion of the charge relating to the impact of judicial comment. We find no such intrusion as would create prejudice or unfairness. State v. Chaney, 160 N.J. Super. 49, 68-70 (App.Div. 1978), certif. den. 78 N.J. 405 (1978), cert. den. 440 U.S. 922, 99 S.Ct. 1250, 59 L.Ed.2d 475 (1979). With regard to defendant's attack on the sentence imposed, there are aggravating circumstances which substantially outweigh the mitigating factors. N.J.S.A. 2C:44-1a(1), (4) and (9). The sentence was neither manifestly excessive nor a mistaken exercise of the discretion reposed in the sentencing judge. State v. Whitaker, 79 N.J. 503, 512 (1979).
Affirmed.
NOTES
[1] N.J.S.A. 2C:2-12(a) provides:

A public law enforcement official or a person engaged in cooperation with such an official or one acting as an agent of a public law enforcement official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages and, as a direct result, causes another person to engage in conduct constituting such offense by ...:
........
(2) Employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
[2] We note that in some situations the burden of proof issue may become moot, i.e., where the existence or absence of objective entrapment is established as a matter of law without factual conflict. See State v. Talbot, supra, 71 N.J. at 168.