STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. DONALD ROCKHOLT, DEFENDANT-APPELLANT.

Argued January 24, 1984—Decided June 27, 1984.

*Mark E. Roddy* argued the cause for appellant (*Goldenberg, Mackler & Sayegh,* attorneys).

*Richard W. Berg,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

SCHREIBER, J.

The issues in this case concern the entrapment defense to a criminal charge as set forth in the New Jersey Code of Criminal Justice (Code), *N.J.S.A.* 2C:2–12. We are called upon here both to interpret the statutory provision and to determine its constitutionality.

Defendant, Donald Rockholt, an Atlantic City police officer, was convicted of: (1) misconduct in office for selling a motorcycle owned by the Atlantic City Police Department; (2) receiving stolen police identification cards;[1] and (3) distributing a controlled dangerous substance. He received an aggregate sentence of eight years incarceration, with no parole ineligibility term, and fines totaling $75 payable to the Violent Crimes Compensation Board. The Appellate Division affirmed. 186 *N.J.Super.* 539 (1982). The defendant petitioned for certification on several grounds. We granted certification primarily to address the entrapment defense. 93 *N.J.* 273 (1983). Since the offense occurred after the effective date of the Code, the Code's entrapment provision governs.

The facts are set forth in the Appellate Division opinion and need not be repeated in detail here. For our purposes it is sufficient to note that the defendant expressly conceded the commission of the crimes, which occurred on three separate occasions. On January 22 and 23, 1980, the defendant, after negotiating with two undercover agents of the New Jersey State Police, sold and delivered to the agents a motorcycle owned by the Atlantic City Police Department. In February,

---

[1]Defendant was also convicted of receiving the stolen motorcycle, but that conviction was merged into the misconduct in office count.

1980, he sold blank Atlantic City police identification cards to one of the undercover agents. Finally, in July, 1980, he sold methamphetamine to the other undercover agent.

In defense, the defendant asserted that the undercover agents had entrapped him into making the illegal sales. Factually, the entrapment defense was predicated on the notion that the defendant needed funds to satisfy his cravings for alcohol and drugs. Although the proofs established that the defendant initiated the transactions in question, the defendant claimed that the undercover agents must have known of his need for money for alcohol and drugs and that they enticed the defendant to make the sales by offering to purchase the motorcycle, identification cards, and controlled dangerous substance. Suffice it to say that the proofs did not establish that the undercover agents had such knowledge and the jury did not find that they induced the sales, although it could have reached such a conclusion under the court's instructions.

The defendant presents two principal legal arguments with respect to the entrapment defense. First, the defendant claims that there are two types of entrapment, subjective and objective, and that the trial court's charge failed to delineate clearly their differences and respective applicability. Second, he asserts that the Code's classification of entrapment as an affirmative defense and its imposition of the burden of proof on the defendant were unconstitutional. An understanding of these contentions requires that the elements of pre-Code entrapment be compared with the elements of entrapment defined by the Legislature in the Code.

I

Prior to the effective date of the Code, entrapment was a judicially-developed defense. This Court first discussed the defense in *State v. Dolce*, 41 *N.J.* 422 (1964). Following the lead of the United States Supreme Court in *Sorrells v. United States*, 287 *U.S.* 435, 53 *S.Ct.* 210, 77 *L.Ed.* 413 (1932), and

*Sherman v. United States,* 356 *U.S.* 369, 78 *S.Ct.* 819, 2 *L.Ed.* 2d 848 (1958), Justice Francis explained in *Dolce* that entrapment existed when the criminal design originated with police officials and was implanted in the mind of an innocent person. 41 *N.J.* at 430. He pointed out that if the defendant were predisposed to commit the crime, the criminal design would not have been sown within an innocent mind, and the defense therefore would not have been available. *Id.* This differentiation between an innocent and a criminally-predisposed person was based on the recognition that decoys, traps, and deceptions properly may be used to apprehend those engaged in crime or to obtain evidence of the commission of crime. *Id.* at 431. As stated in *Sherman v. United States, supra,* 356 *U.S.* at 372, 78 *S.Ct.* at 820, 2 *L.Ed.*2d at 851: "Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer."

*Dolce* indicated that stealth and strategy become objectionable police methods when the criminal design is implanted in the mind of an innocent person. 41 *N.J.* at 431. Under the *Dolce* reasoning, however, there is no entrapment when the police merely furnish opportunities or facilities for, or aid or encourage the defendant in, the commission of an offense, if the intent had its inception in the defendant's mind. *See id.* at 431–32; *accord State v. Rosenberg,* 37 *N.J.Super.* 197, 204 (App.Div. 1955), certif. denied, 20 *N.J.* 303 (1956). As was said in *Dolce, supra,* "a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." 41 *N.J.* at 431; *Sherman v. United States, supra,* 356 *U.S.* at 373–74, 78 *S.Ct.* at 821, 2 *L.Ed.*2d at 851; *accord State v. Dennis,* 43 *N.J.* 418, 425 (1964).

This subjective concept of entrapment was considered to be an affirmative defense in that the issue would not be submitted to the jury unless supportive evidence was introduced, whether by the State or by the defendant. *Dolce, supra,* 41 *N.J.* at 432. Once the defense was raised, however, the burden was on the State to prove beyond a reasonable doubt that police officials

had not entrapped the defendant into committing the act. *Id.* The ultimate issue was left to the jury. *Id.*

In *State v. Talbot*, 71 *N.J.* 160 (1976), this Court expanded the entrapment defense to make it available in situations involving highly egregious police activity, irrespective of the defendant's predisposition to commit the crime. This second type of entrapment defense was "bottomed on the principle of fundamental fairness." *Id.* at 168. The rationale, according to the Court, was that the State should not reap benefits from its police officers' use of law enforcement methods that do not "measure up to commonly accepted standards of decency and conduct to which government must adhere." *Id.* The trial court, not the jury, would decide whether the police had so "overstepped the bounds of permissible conduct" that this entrapment defense would be available. *Id.*

Thus, before the Code became effective, the courts of this State recognized two types of entrapment: subjective and objective. *See State v. Molnar*, 81 *N.J.* 475, 484 (1980) (describing the pre-Code law). The subjective entrapment defense was available when the police had implanted a criminal plan in the mind of an innocent person who otherwise would not have committed the crime. The burden in this type of entrapment case was on the State to prove to the jury beyond a reasonable doubt the absence of entrapment. In contrast, the objective entrapment defense was available when the police conduct was impermissible, even if the defendant had been predisposed to commit the crime. Whether this type of entrapment existed would be determined by the trial court.[2]

II

The Code's entrapment provision, *N.J.S.A.* 2C:2–12, became effective in 1979 and reads as follows:

---

[2]*State v. Talbot*, 71 *N.J.* 160 (1976), did not indicate who has the burden of proof with respect to objective entrapment or the nature of that burden.

a. A public law enforcement official or a person engaged in cooperation with such an official or one acting as an agent of a public law enforcement official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages and, as a direct result, causes another person to engage in conduct constituting such offense by either:

\* \* \*

(2) Employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.[3]

b. Except as provided in subsection c. of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment. The issue of entrapment shall be tried by the trier of fact.

c. The defense afforded by this section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

*N.J.S.A.* 2C:2–12 modified the prior law of entrapment in three ways. First, it shifted the burden of proof. Now it is the defendant who must prove by a preponderance of the evidence that he was entrapped. Second, it provided that both the subjective and objective aspects of entrapment are to be decided by the trier of fact. Finally, *N.J.S.A.* 2C:2–12a(2) changed the definition of entrapment to require both that the police conduct created a substantial risk that the crime would be committed by people who were not predisposed to commit it and that it caused the particular defendant to commit the crime.

*N.J.S.A.* 2C:2–12 was modeled after the Model Penal Code's entrapment defense. The model provision, Model Penal Code § 2.13 (1974), had focused solely on police conduct, not on defendant's character or predisposition. *American Law Institute, Model Penal Code: Tentative Draft No. 9* comments 1–3,

---

[3]The Code provides an alternative to the *N.J.S.A.* 2C:2–12a(2) "substantial risk" requirement—namely, that the official made knowingly false representations designed to induce the belief that the conduct was not prohibited. *N.J.S.A.* 2C:2–12a(1). That alternative requirement, however, is not at issue in this case.

at 14–20 (1959). The American Law Institute commentary states: "It is the attempt to deter wrongful conduct on the part of the government that provides the justification for the defense of entrapment, not the innocence of the defendant." *Id.* at 14. The commentary also makes it clear that the American Law Institute was rejecting the majority Supreme Court opinions in *Sherman, supra,* and *Sorrells, supra,* which had articulated a subjective test of entrapment. Thus, the Model Penal Code (MPC) adopted a purely objective entrapment test. The subjective standard had no relevance and played no part in that entrapment defense.

The New Jersey Legislature was not satisfied with that approach. It added to the Model Penal Code language an additional requirement that the police conduct, "as a direct result, causes" the defendant to commit the crime. This additional language pinpoints the effect of the police action on the particular defendant and thus necessarily triggers an inquiry into the defendant's predisposition.

The commentary to the New Jersey Code suggests that the additional language in *N.J.S.A.* 2C:2–12 was intended to convert an otherwise objective entrapment defense into an amalgam of objective and subjective elements of entrapment. The commentators wrote:

> Our recommended formulation is an *intermediate position* between the MPC provision and the [subjective] test of *Sherman* and *Sorrells.* It accepts the criticism of the latter that it is inappropriate to require innocence. It does not go so far as MPC § 2.13 in that it not only requires the police officer to "induce or encourage" the criminal activity but it requires that his conduct "as a direct result, causes" that activity. Thus, a defendant cannot take advantage of coincidental improper police conduct. While this test, to some extent, cuts down the deterrent [*sic*] effect of the entrapment rule, it does so only in cases where it would be most inappropriate to permit the offender to escape conviction. [II *New Jersey Criminal Law Revision Commission, The New Jersey Penal Code: Final Report* 77 (1971) (emphasis added).]

*Accord Talbot, supra,* 71 *N.J.* at 168 (indicating that section 2C:2–12 of the Proposed New Jersey Penal Code at that time

did not conform to the objective entrapment test that the Court was espousing).

■ We find that the language and history of *N.J.S.A.* 2C:2–12 support the view that the Code entrapment provision replaced the prior law of entrapment with a single statutory defense containing both objective and subjective elements. *See* II *New Jersey Criminal Law Revision Commission, supra,* at 77. *But see dictum* to the contrary in *Molnar, supra,* 81 *N.J.* at 485. The objective element of the Code entrapment defense is found in its provision that the police conduct must have created a substantial risk that the crime would be committed by individuals who were not ready to commit it. This provision makes the defense conditional on evidence that the police conduct was sufficient to entrap people, generally speaking, into committing the crime. The standard is focused on the ability of the average person, rather than the particular defendant, to withstand inducements to engage in criminal activity.

The subjective element of the Code defense is embodied in its statement that the defendant's conduct must be a "direct result" of the police action. This statement makes the entrapment defense conditional on proof that the police conduct caused the particular defendant to commit the crime. A defendant who was predisposed to commit the crime would probably be unable to satisfy this requirement because the police action would not be the "direct" cause of the illegal act.

To construe the "intermediate" position adopted by the Legislature to mean that the objective test remains the exclusive standard of entrapment would make meaningless the modification of the Model Penal Code, for in the absence of that modification, the objective test was the sole criterion. If that interpretation were adopted, the added language that the police officer must not only " 'induce or encourage' the criminal activity but * * * [must,] 'as a direct result, cause[ ]' that activity," II *New Jersey Criminal Law Revision Commission, supra,* at 77, would add nothing functionally to the Model Penal

Code defense.[4] The Model Penal Code would have eliminated police undercover activity that is sometimes necessary to apprehend and convict known criminals. Our Legislature did not intend to permit defendants who perpetrated crimes that they were predisposed to commit to go free.

The Code's modification of the pre-Code objective entrapment defense does not free police to pursue their protective and investigative responsibilities in any fashion. There is still a constitutional due process underpinning to be observed. There may be situations in which the conduct of law enforcement officers is so egregious that the results of that conduct must be set aside as a matter of due process although the subjective

---

[4]This is the end result of the position of the concurrence, which interprets the amended language to signify only proof of causation. As the concurrence notes, Professor Knowlton refers to *N.J.S.A.* 2C:2–12a(2) as a purely objective defense. Knowlton, "Comments Upon the New Jersey Penal Code," 32 *Rutgers L.Rev.* 1, 7 (1979). However, his analysis makes no reference to the then-existing language that had been added to the Model Penal Code entrapment defense by the New Jersey Legislature to the effect that the police conduct must, "as a direct result, cause[ ]" the defendant to commit the crime. Rather, he focuses solely on the Code language embodying the objective element of the defense in reaching his conclusion.

The Senate Judiciary Committee Statement to S. 738, the New Jersey entrapment bill that was eventually enacted, contained the following summary of the law on entrapment:

Chapter 2 also refocuses the legal concept of entrapment. Under current law, the question of whether or not a person was entrapped turns on the state of mind of the accused; that is, the defendant's predisposition. Under the Code, the question of entrapment rests upon the behavior of the law enforcement personnel involved.

The first part of this statement is clearly erroneous. Under the law existing at the time that S. 738 was introduced, there were two types of entrapment: subjective and objective. *See Talbot, supra,* 71 *N.J.* 160. Thus, the defendant could prevail with the entrapment defense either because the criminal design was implanted in the defendant's mind or because the police conduct was improper. The second part of the statement is correct in asserting that under the Code entrapment rests on the behavior of the law enforcement personnel. However, the bill as introduced and as enacted had joined with that objective base an additional requirement of subjective causation.

element of the Code entrapment defense is not satisfied. *See United States v. Russell,* 411 *U.S.* 423, 431–32, 93 *S.Ct.* 1637, 1642–43, 36 *L.Ed.*2d 366, 373 (1973) (noting in dictum that the conduct of law enforcement officers may be "so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction").

In sum, under the Code, when there is evidence of entrapment and that defense is asserted, the trial court should submit the issue to the jury. The court's charge should explain that the defendant must prove, by a preponderance of the evidence, that the police conduct constituted entrapment by both objective and subjective standards. First, the defendant must prove that the police conduct constituted an inducement to crime by objective standards or, in the Code's terms, that the conduct by its nature created a "substantial risk" that the crime would be committed by an average person who was not otherwise ready to commit it. The defendant would not satisfy this requirement if the evidence demonstrated that he was unusually susceptible to inducement and that an ordinary person would not have succumbed to the type of inducement to which he had succumbed. Second, the defendant must prove that the police conduct in fact caused him to commit the crime or, in the words of the statute, that the crime was a "direct result" of the police action. The defendant would not satisfy this requirement if the proofs demonstrated that he was predisposed to commit the crime.

## III

The defendant contends that by placing the burden of proof on him, *N.J.S.A.* 2C:2–12 violates the principle that the State must prove every element of a criminal offense beyond a reasonable doubt. *See In re Winship,* 397 *U.S.* 358, 364, 90 *S.Ct.* 1068, 1072, 25 *L.Ed.*2d 368, 375 (1970). Defendant reasons that the statutory entrapment defense directly implicates the same mental elements of the substantive offenses of which

he was convicted, and that since the State must establish those elements to prove culpability, placing the burden on the defendant to disprove those elements violates the due process clause of the federal Constitution, which provides that no state shall deprive any person of liberty "without due process of law." *U.S. Const.* amend. XIV, § 1. We disagree.

Entrapment is appropriately characterized as the commission of a criminal act pursuant to improper police solicitation. *See* Comment, "Causation and Intention in the Entrapment Defense," 28 *UCLA L.Rev.* 859, 866 (1981). Solicitation ordinarily is not a defense to a criminal prosecution. Rather, the principal remains guilty, regardless of the solicitor's influence, and the solicitor is subject to accomplice liability. Thus, when the solicitor is a private party, entrapment is unavailable as a defense to the solicited crime. It is only when the solicitor is a law enforcement official or someone acting as an agent of, or cooperating with, a law enforcement official that entrapment may provide a defense.

The inapplicability of the entrapment defense when the solicitor is someone other than a police officer demonstrates that inducement to crime does not negate the *mens rea* or mental culpability required for the substantive offense charged. The defendant still has acted with the requisite mental state to support a conviction. Who induced that mental state is a different question. As Justice Stewart noted in his dissent in *United States v. Russell, supra,* 411 *U.S.* at 442, 93 *S.Ct.* at 1648, 36 *L.Ed.*2d at 379:

> That [the defendant] was induced, provoked, or tempted to do so by government agents does not make him any more innocent or any less predisposed than he would be if he had been induced, provoked, or tempted by a private person— which, of course, would not entitle him to cry "entrapment."

Furthermore, predisposition is not the same as *mens rea.* The former involves the defendant's character and criminal inclinations; the latter involves the defendant's state of mind while carrying out the allegedly criminal act. Thus, for example, under certain circumstances a defendant's prior con-

victions for robbery might be admissible on the issue of predisposition but would not be admissible to prove that the defendant committed the robbery for which he was being tried. The prior convictions would also not prove that the defendant committed this particular act of robbery with the requisite purpose or knowledge. Nor would the lack of a prior conviction demonstrate the absence of such a criminal intent; the nonpredisposition that is necessary to establish entrapment is not equivalent to the absence of the mental culpability required for the underlying crime.

██ The entrapment defense, rather than negating *mens rea*, expresses, in part, a legislative policy of discouraging improper police inducements to criminal conduct. Justice Francis' observation in *Dolce* is still pertinent: "[C]onviction of the defendant cannot be had [in cases of entrapment] because the methods employed by the enforcement officials are unconscionable and contrary to public policy." *Dolce, supra,* 41 *N.J.* at 431. So viewed, entrapment represents a non-exculpatory public policy defense that does not involve the critical mental element of the crime. *See* Robinson, "Criminal Law Defenses: A Systematic Analysis," 82 *Colum.L.Rev.* 199, 238 (1982). Accordingly, the State is not constitutionally compelled to bear the burden of proving the absence of entrapment beyond a reasonable doubt.

## IV

The defendant has challenged several aspects of the jury charge. We find, however, that the charge correctly conveyed the burden of proof and the essential elements of the entrapment defense under the Code, and thus generally accorded with our interpretation of the law as expressed in this opinion.

██ The defendant additionally argues that the charge as a whole was confusing. Indeed, although the charge described the objective and subjective elements of statutory entrapment, it may not have made clear that these were two separate

prerequisites of the Code defense. However, any resulting confusion in the minds of the jurors would have worked to the defendant's benefit by affording the defendant the opportunity to be acquitted on the basis of only one of the two essential elements of the defense.

The defendant also claims that the charge failed to explain the difference between objective and subjective entrapment. As noted above, *N.J.S.A.* 2C:2-12 replaced the judicially-created objective entrapment defense and it was therefore error for the court to instruct the jury on pre-Code objective entrapment as an independent defense. Moreover, the record does not contain evidence of such egregious conduct by the police to approach the level of a due process violation. Any instructions on objective entrapment thus resulted in a charge that was excessively generous to the defendant.

The defendant further contends that the court prejudicially characterized the State's evidence on the entrapment issue by stating in its charge that "the Court has permitted to be introduced for your consideration evidence of ready compliance with minimal inducement or easily yielding to the opportunity to commit the defense." Any error implicit in this sentence, however, was rendered harmless by the rest of the charge. Taken as a whole, the charge made clear that whether the defendant was predisposed to commit the crime was an open question for the jury to decide.

Here the jury rejected both the pre-Code objective entrapment defense and the Code entrapment defense. Moreover, there was substantial evidence justifying the jury's rejection of those defenses.

We find no merit in the defendant's other claims.

Judgment affirmed.

O'HERN, J., concurring.

I concur in the judgment of the Court. I believe that the defendant was given an adequate charge on the issue of statutory entrapment under *N.J.S.A.* 2C:2-12.

I wish to add a few observations, based on the legislative history of the provision, that may properly serve to focus the inquiry at the time of trial.

The primary legislative statement accompanying the passage of the Code, the Senate Judiciary Committee Statement to S. 738, described the new entrapment provision as objective:

> Chapter 2 also refocuses the legal concept of entrapment. Under current law, the question of whether or not a person was entrapped turns on the state of mind of the accused; that is, the defendant's predisposition. Under the Code, the question of entrapment rests upon the behavior of the law enforcement personnel involved.

This legislative understanding is borne out by the language of the statute. It explicitly defines entrapment in terms of the conduct employed by public law enforcement officials. The statute reads:

> 2C:2–12. Entrapment
>
> a. A public law enforcement official or a person engaged in cooperation with such an official or one acting as an agent of a public law enforcement official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages and, as a direct result, causes another person to engage in conduct constituting such offense by either:
>
> (1) Making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
>
> (2) Employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
>
> b. Except as provided in subsection c. of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment. The issue of entrapment shall be tried by the trier of fact.
>
> c. The defense afforded by this section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

The Code's provision, according to the Commentary, "accept[ed] the criticism * * * that it is inappropriate to require innocence" of the defendant. II Final Report of the New Jersey Criminal Law Revision Commission: Commentary 77 (1971). It is a change from prior law and closely parallels the view of Justice Frankfurter, concurring in *Sherman v. United*

*States*, 356 *U.S.* 369, 78 *S.Ct.* 819, 2 *L.Ed.*2d 848 (1958). The jury's role under the Code will no longer center on the issue "Is the defendant a strayed lamb or an ensnared wolf?" *See State v. Dolce*, 41 *N.J.* 422, 431 (1964). Instead, the jury will be asked to "appl[y] the same standard of police conduct for everyone." Knowlton, *Comments Upon the New Jersey Penal Code*, 32 *Rutgers L.Rev.* 1, 7 (1979).

Professor Knowlton, Chairman of the Criminal Law Revision Commission, wrote:

> New Jersey case law had adopted the federal test for entrapment, which focuses upon whether or not the defendant was otherwise innocent and whether or not the intent to commit a crime originated with the police or the defendant. The new Penal Code adopts the view espoused by a minority of the United States Supreme Court. This test makes it entrapment to employ "methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are willing to commit it." The latter test is the better one because it prevents the introduction of highly prejudicial evidence demonstrating the accused's propensity to commit crime, and it applies the same standard of police conduct for everyone. Moreover, it reflects the fact that it is the police conduct that is important, not the character of the accused. [Knowlton, *supra*, at 7 (footnotes omitted).]

*N.J.S.A.* 2C:2–12 is based on—and, in fact, almost identical to—Model Penal Code § 2.13. The only change the Code drafters made from the MPC version was the addition of the underlined phrase:

> A public law enforcement official * * * perpetrates an entrapment if * * * he induces or encourages *and, as a direct result, causes* another person to engage in conduct constituting such offense * * *.

The effect of this causation language, according to the drafters, was to tie the entrapment to the particular defendant:

> Thus, a defendant cannot take advantage of coincidental improper police conduct. While this test, to some extent, cuts down the deterr[e]nt effect of the entrapment rule, it does so only in cases where it would be most inappropriate to permit the offender to escape conviction. [Code Commentary, *supra*, at 77.]

The causation language pinpoints the effect of police conduct on the defendant. This will necessarily trigger an inquiry into the particular defendant's response to it, but will not occasion a discursion into the defendant's character.

Although preferring that the issue be one for the judge, not the jury, Professor Knowlton was satisfied that the Code provisions, putting the burden of proof on the defendant and giving the issue to the jury, were fair because "the change in the test for entrapment eliminates the gravest difficulty with a jury determination—the introduction at trial of evidence of the defendant's criminal propensity." Knowlton, *supra*, at 8. In this respect our Code reflects contemporary recommendations at the federal level. *See* Final Report of the Senate Select Committee to Study Undercover Activities of Components of the Department of Justice (1982); Final Report of the National Commission on Reform of Federal Criminal Laws § 702 comment, at 58 (1971).

This Court has emphasized that the new Criminal Code represents a "clean break with the past." *State v. Roth*, 95 *N.J.* 334, 369 (1984); *State v. Butler*, 89 *N.J.* 220, 226 (1982). The Code's entrapment provisions exemplify that clean break.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For reversal*—None.