571 So.2d 1346 (1990)
Ramon Efrain GONZALEZ, Alexandro Estremera, Luis Felipe Gonzalez, and Rodrigo Vargas, Appellants,
v.
The STATE of Florida, Appellee.
Nos. 89-1823, 89-1754, 89-1748 and 89-1747.
District Court of Appeal of Florida, Third District.
October 16, 1990.
Rehearing Denied January 15, 1991.
*1347 Barry T. Shevlin, Miami, for appellant Alexandro Estremera.
Rene A. Sotorrio, Coconut Grove, for appellant Ramon Efrain Gonzalez.
Bennett H. Brummer, Public Defender, and Robert Burke, Asst. Public Defender, for appellant Rodrigo Vargas.
Musto Zaremba and Rosenthal and Anthony C. Musto, Sp. Asst. Public Defender, for appellant Luis Felipe Gonzalez.
Robert A. Butterworth, Atty. Gen., and Roberta G. Mandel, Asst. Atty. Gen., for appellee.
Before BASKIN, JORGENSON and GODERICH, JJ.
JORGENSON, Judge.
Appellants, in consolidated appeals, seek review of their convictions for attempted trafficking in cocaine and conspiracy to traffic in cocaine. We affirm.
In a reverse sting operation, Detective Carlos Zayas arranged through a confidential informant to sell five kilos of cocaine to Rodrigo Vargas. After several taped telephone conversations with Vargas, Zayas and Vargas agreed to meet at X-tra Supermarket to "make the deal." Detective Zayas arrived at X-tra wearing a body bug. Other officers videotaped the transaction.
*1348 At the supermarket, Vargas was accompanied by Ramon Gonzalez, Luis Gonzalez, and Alexandro Estremera. Zayas met Vargas near the entrance of the supermarket; they then met and spoke with Luis Gonzalez. Vargas and Luis Gonzalez took Zayas to a black BMW occupied by Estremera and Ramon Gonzalez. Zayas asked to see the money, and Ramon Gonzalez showed him a box filled with money. After some discussion between Zayas and the defendants, Ramon Gonzalez pulled out a number of twenty-dollar bills from the box to prove that the money was not counterfeit. Next, Detective Zayas asked who would test the cocaine. Estremera said that he would test it, and he and Zayas walked to the undercover vehicle. Later, they were joined by Vargas and Luis Gonzalez. In the undercover car, Estremera tested a kilo of cocaine and indicated that he liked it and would buy the full five kilos. Luis Gonzalez took possession of the kilo. The remainder of the transaction was to have been completed at an apartment. Estremera, Vargas, and Luis Gonzalez were arrested as they walked back to their car; Ramon Gonzalez had remained in the car and was arrested there.
The defendants were tried jointly for trafficking and conspiracy to traffic in cocaine. Defense counsel for all defendants stipulated to the voir dire of prospective jurors in the absence of the court. Additionally, Ramon Gonzalez consented to representation during voir dire by counsel for a codefendant while his attorney was out of town.
At trial, the videotape, the audio tapes, and a transcript of the tapes translated from Spanish into English were admitted into evidence. The transcript referred to "four bad guys" and "a bad man." The trial court granted a defense motion to excise the statements; however, the transcript was admitted in its entirety. Defendants raised the defense of entrapment at trial. Over objection, the trial court gave the new standard jury instruction on entrapment[1] and informed the jury that the defendant has the burden of proving by a preponderance of the evidence that his criminal conduct occurred as a result of entrapment. The court further instructed the jury that the state bore the burden of proving all material elements of the crimes charged beyond a reasonable doubt. Also, over objection, the court defined "purchase" as part of the instruction on trafficking. Finally, several objections were made to the prosecutor's closing remarks. Ultimately, all defendants were found guilty of attempted trafficking and conspiracy to traffic in cocaine.
Appellants raise several issues on appeal. After a careful review of the record, however, we conclude that the convictions and sentences must be affirmed.

SUFFICIENCY OF CONSPIRACY EVIDENCE
Appellants contend that the evidence was insufficient to support a conspiracy conviction. We disagree. "[D]irect proof of an agreement is not necessary to establish a conspiracy; the jury is free to infer from all the circumstances surrounding and accompanying the act that the common purpose to commit the crime existed." Horner v. State, 558 So.2d 138, 139 (Fla. 3d DCA 1990), citing Herrera v. State, 532 So.2d 54, 58 (Fla. 3d DCA 1988). The jury is also free to consider the defendants' presence at the place of the sale in determining their guilt. Herrera, 532 So.2d at 58. We conclude that Zayas's testimony, the videotape, and the body bug tape were sufficient evidence from which the jury could infer both a common purpose to commit the crime of trafficking and an intention to do so. See Herrera (where three individuals were present at scene of prearranged drug sale and where all participated in testing of cocaine for sale, evidence was sufficient to support conspiracy). We further conclude that there was independent evidence of a conspiracy involving all four defendants apart from the statements made by codefendants Vargas, Estremera, *1349 and Ramon Gonzalez. Therefore, Luis Gonzalez's contention that these statements were improperly considered against him is without merit. Romani v. State, 542 So.2d 984 (Fla. 1989).

ENTRAPMENT
The second point on appeal is whether the standard jury instruction on entrapment that tracks the language of Florida's newly enacted entrapment statute unconstitutionally relieves the state of its burden of proving beyond a reasonable doubt all of the elements of the offenses charged. This is an issue of first impression.
Florida's entrapment statute provides that:
(1) A law enforcement officer, a person engaged in cooperation with a law enforcement officer, or a person acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.
(2) A person prosecuted for a crime shall be acquitted if he proves by a preponderance of the evidence that his criminal conduct occurred as a result of an entrapment. The issue of entrapment shall be tried by the trier of fact.
§ 777.201, Fla. Stat. (1987).
Before section 777.201 was enacted, the judicially created defense of entrapment consisted of two independent, coexisting elements. The first element, the "traditional" or "subjective" standard, defined entrapment as "law enforcement conduct which implants in the mind of an innocent person the disposition to commit the alleged crime, and hence induces its commission... . Under this traditional formulation, the defense of entrapment is limited to those defendants who were not predisposed to commit the crime induced by government actions." Cruz v. State, 465 So.2d 516, 521 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985). The second, independent, "objective" standard for assessing entrapment recognized that "when official conduct inducing crime is so egregious as to impugn the integrity of a court that permits a conviction, the predisposition of the defendant becomes irrelevant." Cruz, 465 So.2d at 521. The subjective test focused on the predisposition of the defendant; the objective test focused on the conduct of the police and the proper uses of governmental power.
Florida's new entrapment statute codifies the subjective test by providing that entrapment has occurred when the police methods used to obtain evidence of the commission of a crime involved "methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it." § 777.201. The objective test articulated in Cruz was abolished. Gonzalez v. State, 525 So.2d 1005 (Fla. 3d DCA 1988); State v. Lopez, 522 So.2d 537 (Fla. 3d DCA 1988).[2]See also House of Representatives Committee on Criminal Justice Staff Analysis, June 27, 1989, at 177 ("This section overrules the Florida Supreme Court's decision in Cruz v. State, 465 So.2d 516 (Fla. 1985), which held that the objective test of whether law enforcement conduct was impermissible was in the discretion of the trial court").[3] *1350 However, the legislature's omission of the objective test does not mean that the government is now free to pursue its law enforcement efforts in any manner it chooses. This court has recognized that the objective test for entrapment parallels a due process analysis. Brown v. State, 484 So.2d 1324 (Fla. 3d DCA), rev. denied, 492 So.2d 1330 (Fla. 1986). Thus, "prosecution of a defendant may be barred where the government's involvement in the criminal enterprise `is so extensive that it may be characterized as `outrageous.''" 484 So.2d at 1327. See also State v. Rockholt, 96 N.J. 570, 581, 476 A.2d 1236, 1241, (1984) citing United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) ("There is still a constitutional due process underpinning to be observed. There may be situations in which the police conduct is so egregious that the results of that conduct must be set aside as a matter of due process even if the subjective element of the entrapment defense is not satisfied."). In sum, although the entrapment statute did not codify the Cruz objective test, the federal due process clause, which we of course are obligated to enforce, continues to mark the outer limits of permissible police conduct.
The entrapment statute further modified the common law entrapment defense by shifting the burden of proof. Before section 777.201 was enacted, the defendant merely had the burden of adducing evidence of entrapment; once that evidence was introduced, the trial court determined its sufficiency, and, if the evidence was sufficient, the state had the burden of disproving entrapment beyond a reasonable doubt. State v. Wheeler, 468 So.2d 978 (Fla. 1985). Thus, under Wheeler, the burden lay "with the state to disprove entrapment, which is usually done by proving the predisposition of the defendant beyond a reasonable doubt." 468 So.2d at 981. Now, the defendant must prove by a preponderance of the evidence that "his criminal conduct occurred as a result of an entrapment." § 777.201(2).
The statute does not, as defendants argue, unconstitutionally relieve the state of proving intent, an essential element of the crime. Predisposition and intent are distinct, albeit related concepts. Predisposition to commit a crime is shown if the intent to commit the crime originates in the mind of the accused and not in the minds of the government. See Dupuy v. State, 141 So.2d 825 (Fla. 3d DCA), cert. denied, 147 So.2d 531 (Fla. 1962). For example, the prosecution may prove predisposition by showing that the defendant had prior convictions for similar crimes, a reputation for engaging in similar illicit acts, that the police had a reasonable suspicion that the defendant was engaged in similar crimes, or that the defendant showed "ready acquiescence to commit the crime... ." Cruz, 465 So.2d at 515. Evidence of predisposition is akin to character evidence relating to a defendant's propensity to commit a crime.
[P]redisposition is not the same as mens rea. The former involves the defendant's character and criminal inclinations; the latter involves the defendant's state of mind while carrying out the allegedly illegal act... . [T]he nonpredisposition that is necessary to establish entrapment is not equivalent to the absence of the mental culpability required for the underlying crime.
State v. Rockholt, 96 N.J. at 582-583, 476 A.2d at 1242. Demonstrating a lack of predisposition, therefore, does not demonstrate lack of intent; requiring the defendant who asserts the defense of entrapment to prove that he was not predisposed to commit the crime does not relieve the state of the burden of proving that the defendant had formed the requisite intent to commit the crime.[4]
*1351 Moreover, it is well settled that each state has the power "to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, and its decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Patterson v. New York, 432 U.S. 197, 201-202, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281, 286-287 (1977) (citations omitted). The freedom of the states in this regard is illustrated in Patterson, where the court said: "We thus decline to adopt as a constitutional imperative, operative countrywide, that a state must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused... . Proof of the nonexistence of all affirmative defenses has never been constitutionally required... ." 432 U.S. at 211, 97 S.Ct. at 2327, 53 L.Ed.2d at 292. On the specific issue of entrapment, the Florida Supreme Court in Cruz, citing United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), observed that the defense of entrapment is not of constitutional dimension. Cruz, 465 So.2d at 518.
Accordingly, we see no reason not to treat entrapment like any other affirmative defense in Florida by placing the burden of proving that defense on the defendant.[5]See, e.g., Molina v. State, 561 So.2d 425 (Fla. 3d DCA 1990) (defendant in criminal case has burden of proving affirmative defense).[6]
The entrapment statute also changed the common law defense of entrapment by providing that "[t]he issue of entrapment shall be tried by the trier of fact." Under the common law, the objective test was a threshold question of law for the court; the determination of predisposition was a question of fact for the jury. Wheeler, 468 So.2d at 981. Nevertheless, although the legislature abolished the Cruz objective test, it did not and could not repeal the Fifth and Fourteenth amendments to the United States Constitution. The classic due process analysis regarding police conduct remains a purely legal issue that must be decided by the court and not the jury.
Accordingly, we conclude that neither the entrapment statute nor Standard Jury Instruction 3.04(c)(2) violates a defendant's constitutional rights by requiring him to prove that he was not predisposed to commit the crime. The trial court's instruction on entrapment was proper.

VOIR DIRE
Two points on appeal have been raised by appellants with respect to the voir dire proceedings. First, appellants allege that they did not knowingly and intelligently waive their right to have the trial judge present during voir dire. Appellants' respective attorneys stipulated to the voir dire of prospective jurors in the judge's absence. This constituted a valid waiver. State v. Hernandez, 552 So.2d 911 (Fla. 1989). In Hernandez, the Florida Supreme Court held that the judge's presence during voir dire could be waived by defendant's attorney in a case in which the jury was selected before the Florida Supreme Court issued its final decision in State v. Singletary, 549 So.2d 996 (Fla. 1989). Because the jury was selected before Singletary became final, it was not necessary for defendants *1352 to join in their counsel's waiver of the judge's presence during voir dire.
Second, appellant Ramon Gonzalez alleges that the trial court erred in allowing Ellis Rubin, attorney for one of the codefendants, to conduct voir dire on Gonzalez's behalf while his own attorney, Mark Rubin, was out of town. We disagree. It is clear from the trial transcript that Ramon Gonzalez consented to have his lawyer's father pick the jury. The trial judge asked Gonzalez whether he had "any problem with your lawyer's father picking the jury while your lawyer is in Tampa." In response, Gonzalez answered, "No, Your Honor." Although Gonzalez's attorney, Mark Rubin, later objected on the record, stating that he had not had the opportunity to question the jury, subsequently, when the final jury selection occurred, Mark Rubin voiced no objections to the jurors selected and never sought to question further any of the jurors. In light of Gonzalez's consent and the lack of counsel's meaningful objection, we conclude that Ramon Gonzalez was not deprived of his right to a fair and impartial jury. See Smith v. State, 539 So.2d 601 (Fla. 3d DCA 1989) (lengthy colloquy between defendant and trial judge in which defendant affirmatively demonstrated his knowledge of decision to forego jury constituted a valid waiver).

"BAD MAN" REFERENCES IN TAPE TRANSCRIPT
Appellants contend that they are entitled to a new trial because the trial court admitted into evidence a portion of the tape transcript in which Detective Zayas refers to the defendants as "four bad guys" and "a bad man." We disagree. Out of thirteen pages of transcript, the two "bad man" references were harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986) (where error complained of did not contribute to verdict, error is harmless). There was sufficient evidence from which the jury could have determined the defendants' guilt without having considered the "bad man" reference. See Kirkland v. State, 478 So.2d 1092 (Fla. 1st DCA 1985) (where jury would have returned guilty verdict even if transcribed statement had not been before them, error was harmless), rev. denied, 488 So.2d 68 (Fla. 1986).

INAUDIBLE TRANSCRIPT
We likewise conclude that the trial court did not abuse its discretion in admitting the audio tape and transcript into evidence. "Partial inaudibility or unintelligibility is not a ground for excluding a recording if the audible parts are relevant, authenticated, and otherwise properly admissible." Odom v. State, 403 So.2d 936 (Fla. 1981) (citations omitted), cert. denied, Odom v. Florida, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982). A review of the tape transcript reveals that the tape had sufficient relevant portions that were audible to justify its admission. Moreover, in addition to listening to the tape and reviewing the transcript, the jury heard testimony from two detectives regarding the defendants' involvement and also viewed a videotape. The tape and transcript, therefore, were not required to support defendants' convictions.

PROSECUTORIAL MISCONDUCT
In addition to the foregoing points on appeal, appellants contend that the trial court erred in denying their motion for mistrial and for curative instruction based on improper comments during the prosecutor's closing argument. None of the alleged errors preserved for appeal were of such prejudicial nature as to warrant reversal. See State v. Murray, 443 So.2d 955, 956 (Fla. 1984) (prosecutorial error alone does not warrant reversal unless trial error was "so prejudicial as to vitiate the entire trial"). The other alleged errors which were not preserved for review were not so fundamental as to require a new trial. See Groover v. State, 489 So.2d 15 (Fla. 1986) (defendant barred from claiming error on appeal in absence of objection at trial to prosecutor's statements where statements did not amount to fundamental error).[7]

*1353 CONCLUSION
As no reversible error has been made to appear, defendants' judgments of conviction and sentences entered thereon are
AFFIRMED.
NOTES
[1] Florida Standard Jury Instruction (Criminal) 3.04(c)(2) provides in pertinent part that "[o]n the issue of entrapment, the defendant must prove to you by a preponderance of the evidence that his criminal conduct occurred as the result of entrapment."
[2] The districts are in conflict over whether the Cruz objective entrapment test has survived the enactment of section 777.201. See Bowser v. State, 555 So.2d 879 (Fla. 2d DCA 1989); State v. Burch, 545 So.2d 279 (Fla. 4th DCA 1989), approved on other grounds, 558 So.2d 1 (Fla. 1990).
[3] Subsection (1) of the entrapment statute appears, at first reading to focus on the conduct of the police by providing that an entrapment has occurred if the police conduct creates a "substantial risk that such crime will be committed by a person other than one who is ready to commit it." However, subsection (2) makes it clear that a defendant will be acquitted on the basis of entrapment only if he can prove, by a preponderance of the evidence, that "his criminal conduct occurred as a result of an entrapment." The sole statutory test for entrapment is, therefore, the subjective test of whether the defendant was predisposed to commit the crime, or as the statute provides, whether the defendant was a person who was "ready to commit the crime." Subsection (1) appears to prevent a defendant from taking advantage of "coincidental improper police conduct." State v. Rockholt, 96 N.J. 570, 581, 476 A.2d 1236, 1241 (construing an entrapment statute similar to Florida's).
[4] The trial court gave the jury the standard instruction that the state is required to prove beyond a reasonable doubt all of the elements of the offense of attempted trafficking and conspiracy to traffic in cocaine. The jury was thus properly instructed on the state's burden of proof.
[5] Our decision is in accord with the Florida Supreme Court's recent pronouncement in State v. Cohen, 568 So.2d 49 (Fla. 1990), which held that "[a]n `affirmative defense' is any defense that assumes the complaint or charges to be correct but raises other facts that, if true, would establish a valid excuse or justification or a right to engage in the conduct in question. An affirmative defense does not concern itself with the elements of the offense [which must always be proven by the State] but it concedes them."
[6] See also Senate Staff Analysis and Economic Impact Statement on Crime Prevention, Bill No. CS/HB 1467 (May 25, 1987) (Entrapment is "an affirmative defense ... available to a defendant who establishes to the trier of fact by a preponderance of the evidence that he was not predisposed to commit the offense charged.").
[7] Appellants also allege error in the trial court's instruction on the definition of "purchase" and on the defendant's burden of proof in a criminal case. Gonzalez never offered his own definition of "purchase." The jury was given the standard dictionary definition of purchase and the standard jury instruction on burden of proof. Defendants were not prejudiced by either of these instructions. See Lawson v. State, 552 So.2d 257 (Fla. 4th DCA 1989), rev. denied, 563 So.2d 632 (Fla. 1990).