597 So.2d 842 (1992)
Brian LEWIS, Appellant,
v.
The STATE of Florida, Appellee.
No. 91-1072.
District Court of Appeal of Florida, Third District.
March 24, 1992.
Rehearing Denied June 9, 1992.
Lavalle, Wochna, Raymond & Brown, and Kenneth J. Ronan, Boca Raton, for appellant.
Robert A. Butterworth, Atty. Gen., and Angelica D. Zayas, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and BARKDULL and GERSTEN, JJ.
PER CURIAM.
Appellant, Brian Lewis (Lewis), appeals the denial of a motion to dismiss. We reverse.
Lewis, a thirty year old car salesman who had never been arrested, fatefully encountered Juan Carlos at a night club. Juan Carlos, a confidential informant for the Miami Beach Police Department, was particularly friendly to Lewis and insisted they go to another nightclub.
Juan Carlos, flashing a lot of money, paid for the entrance fee to the club, and for several drinks. During the course of the evening, Juan Carlos stated that he was involved in drug dealing.
Juan Carlos said there was a lot of money to be made in the business and offered Lewis cocaine. Lewis, however, refused. Juan Carlos told Lewis that if Lewis could introduce Juan Carlos to a purchaser of a kilo or more of cocaine, Lewis would make *843 between $1,000 and $2,000. Lewis declined to get involved.
The next day, Juan Carlos repeatedly called Lewis's home and left messages on Lewis's answering machine. When Lewis returned the calls, Juan Carlos again offered $1,000-$2,000 for an introduction to a purchaser of cocaine. Lewis again declined, saying that he "didn't want to get involved."
Later on at work, Lewis spoke to Eugene Marzullo (Marzullo), a coemployee and codefendant in this case. Lewis told Marzullo about his very unusual night (with Juan Carlos), and about Juan Carlos's offer. Marzullo expressed an interest in buying drugs and also offered to pay Lewis if the deal could be made. Meanwhile, Juan Carlos continued calling Lewis frequently at home and at work, insisting that Lewis find a buyer for the cocaine.
Finally, Lewis agreed to introduce Juan Carlos to Marzullo. A meeting was set up. Lewis brought Marzullo, who had $20,000 with him, to purchase the drugs. Juan Carlos, brought a detective, who posed as Juan Carlos's cousin. After the drug transaction was finalized, the police arrested both Lewis and Marzullo for trafficking in cocaine.
The unfolding of Juan Carlos's personal history shows that he had previously been arrested and convicted for trafficking in cocaine. Juan Carlos entered into a substantial assistance agreement with the State and was placed on probation.
At the time of Lewis's arrest, Juan Carlos had fulfilled his substantial assistance agreement. Juan Carlos, however, chose to continue living in the nether world of drugs and fast money. This convicted drug trafficker was working as an informant for pay. Juan Carlos's payment was neither contingent upon his testimony nor participation in trial. Juan Carlos's fee was contingent, in part, on the amount of property seized in an arrest.
Lewis moved to dismiss the charges against him, arguing: 1) violation of his due process rights; and, 2) objective entrapment. The trial court rejected both of Lewis's arguments and denied the motion. Lewis pled no contest, reserving his right to appeal.
On appeal, Lewis again argues that his due process rights under Article 1, Section 9, of the Florida Constitution, were violated. He claims he was randomly picked out by a police informant who was paid a contingent fee that was determined, in part, by the amount of property seized. Lewis further asserts that he was objectively entrapped because the police activity in question did not have as its end, the interruption of a specific ongoing criminal activity.
Appellee contends that because payment to the informant was not contingent on the informant testifying at trial, Lewis's due process rights were not violated. Appellee also argues that the issue of entrapment should be decided by a jury.
State v. Hunter, 586 So.2d 319 (Fla. 1991), a case similar to this one, controls. In that case, the Florida Supreme Court rejected the argument that the appellant's due process rights had been violated. The court limited the holding of State v. Glosson, 462 So.2d 1082 (Fla. 1985), to cases where the confidential informant's contingent fee was conditioned on his trial testimony.
Here, the confidential informant was not required to testify in order to receive his fee. Therefore, we must reject Lewis's due process argument. State v. Hunter, 586 So.2d at 321.
However, the Hunter court also found that the appellant had been objectively entrapped by the police. The court gave trial courts guidance by stating:
To guide trial courts, we set out a threshold test for establishing entrapment: "entrapment has not occurred as a matter of law where police activity (1) has as its end the interruption of a specific ongoing criminal activity; and (2) utilizes means reasonably tailored to apprehend those involved in the ongoing criminal activity."
State v. Hunter, 586 So.2d at 322 [quoting from Cruz v. State, 465 So.2d 516 (Fla.), *844 cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985)].
The Hunter court reversed based on objective entrapment reasoning that neither part of the Cruz test had been met. The court in Hunter found that, like here, there was no "specific ongoing criminal activity" until the informant created such activity.
Similarly, in this case, we find that neither part of the Cruz test was satisfied. The first prong of the Cruz test was not met because Lewis was not involved in a specific ongoing criminal activity. In fact, there was no crime until Juan Carlos created it. It was Juan Carlos who flashed money, and persistently pursued Lewis, attempting to bring him into the drug trade. Also, the second prong of the Cruz test was not met because the police activity was not reasonably tailored to apprehend those involved in ongoing crime. Accordingly, we reverse and remand with instructions that Lewis be discharged.
Reversed and remanded.[1]
BARKDULL and GERSTEN, JJ., concur.
SCHWARTZ, Chief Judge (specially concurring).
Lewis does not claim he was coerced or seduced into an offense he was not predisposed to commit. He need just have said "no" to the criminal opportunity presented him. Instead, for expected profit, he voluntarily chose to traffic in cocaine. Nevertheless, the charges against him, although true, are dismissed because the state did not previously know of his proclivities and therefore, it is said, had no constitutional right to proceed against him. While the wisdom and logic, not to mention justice, of this result  which is the law only in Florida  completely escape me,[1] I concur in this decision[2] because it is mandated by my judicial superiors. I am forced to agree that State v. Hunter, 586 So.2d 319 (Fla. 1991) is controlling and that it holds  notwithstanding legislation we have determined is directly to the contrary, see Gonzalez v. State, 571 So.2d 1346 (Fla. 3d DCA 1990), review denied, 584 So.2d 998 (Fla. 1991)  that "objective entrapment"[3] as uniquely defined by the Florida supreme court remains a conclusive defense to a criminal prosecution. Nevertheless, several factors lead me to share the uncertainty and misgivings which have been expressed about this conclusion. See State v. Pham, 595 So.2d 85 (Fla. 1st DCA 1992); Simmons v. State, 590 So.2d 442 (Fla. 1st DCA 1991); see also State v. Petro, 592 So.2d 254, 255 n. 1 (Fla. 2d DCA 1991).
In the first place, it is clear that Hunter can be rationalized only on one of the alternative grounds that section 777.201, Florida Statutes (1987) did not overrule the objective entrapment aspect of Cruz v. State, 465 So.2d 516 (Fla. 1985), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985); contra Gonzalez v. State, 571 So.2d at 1349[4]; State v. Munoz, 586 So.2d 515 (Fla. 1st DCA 1991), or, if it did, that the *845 statute is unconstitutional. But Hunter does not so much as cite the statute or Gonzalez and does not directly say that "objective entrapment" is constitutionally prohibited; indeed, the discussion of the issue in the majority opinion does not contain either the word "constitutional" or "unconstitutional." The statement that "[b]y focusing on police conduct, this objective entrapment standard includes due process considerations," Hunter, 586 So.2d at 322  if it indeed amounts to an implied invalidation of section 777.201  is hardly the reasoned and explicit holding one might expect if a statute is to be struck down.
Moreover, any such determination, as explicated in the separate opinion of Justice Kogan (which was not referred to by the majority and which also does not mention section 777.201 or Gonzalez), is directly contrary to the statement in Cruz itself that
[w]hile the objective view parallels a due process analysis, it is not founded on constitutional principles.
Cruz, 465 So.2d at 520 n. 2.[5]Hunter contains no acknowledgment of, much less an explanation for the sea change it embodies from this conclusion.[6] What is more, Hunter does not refer to that portion of Cruz which comments upon its adoption of the holding in State v. Molnar, 81 N.J. 475, 410 A.2d 37 (1980), that objective entrapment is a viable[7] and separate[8] defense. Cruz states that:
Subsequent to its Molnar decision, the New Jersey court held that statutory law had superseded the common law, placing the decision on both the subjective and objective aspects of entrapment in the hands of the trier of fact, State v. Rockholt, 96 N.J. 570, 476 A.2d 1236 (1984). Even though the New Jersey court concluded that its common law paradigm had been supplanted, it noted that there may still be situations where the government conduct is so outrageous that constitutional due process requires dismissal. See discussion at note 1, supra. *846 There is no parallel to the New Jersey legislative action in Florida, and we conclude that the policy considerations of the Molnar decision remain valid in this case. [e.s.]
Cruz, 465 So.2d at 521 n. 3. Section 777.201  which was at least in part apparently intended to overrule Cruz[9]  has made the present situation the rough equivalent of the one which produced the contrary decision in State v. Rockholt, 96 N.J. 570, 476 A.2d 1236 (1984). See discussion of Rockholt in Gonzalez. However, Hunter does not cite Rockholt either.
Considered as an original proposition, moreover, it is hard to see, and we are not told, the basis for recognizing a constitutionally protected interest in the particular manner in which one's criminality is discovered and pursued.[10],[11] Not only is the contrary conclusion that mere "objective entrapment" is constitutionally proscribed unprecedented in any jurisdiction,[12],[13],[14] it is very arguably an improper judicial interference with the prerogative of the executive in law enforcement and criminal prosecution and, after section 777.201, with the legislative function, as well. But see Chiles v. Children A, B, C, D, E, and F, 589 So.2d 260 (Fla. 1991) (applying doctrine of separation of powers).
Finally, it is unclear whether Hunter, which overruled Gonzalez or partially invalidated section 777.201 without referring to either one, has been affected by Herrera v. State, 594 So.2d 275 (Fla. 1992), which specifically applies both without referring to Hunter. I do not believe the doubts *847 about Hunter created by this remarkable omission are entirely dissipated by Justice Kogan's separate opinion explaining it on the basis of a dichotomy between objective and subjective entrapment; unfortunately, the distinction is not reflected in the opinion of the court which, to the contrary, employs only the unqualified, generic term "entrapment."
For all these reasons, I am emboldened to think aloud that an ipse dixit is not enough to justify freeing persons who have committed serious violations of the criminal law solely because they were found out by a common investigative technique which is forbidden by no other jurisdiction and which has been specifically approved by the legislature. But a lower court judge is like the unfortunate six hundred at Balaklava.[15] Because I have to, I concur.
NOTES
[1] We are not unaware of the line of cases holding that the enactment of section 777.201, Florida Statutes, evinces a legislative intent to overrule Cruz. See, e.g., State v. Thinh Thien Pham and Hang Thi Vu, 595 So.2d 85 (Fla. 1st DCA 1992); Gonzalez v. State, 571 So.2d 1346 (Fla. 3d DCA 1990), review denied, 584 So.2d 998 (Fla. 1991). However, we choose to rely on our most recent Supreme Court cases on the issue. See State v. Krajewski, 589 So.2d 254 (Fla. 1991); State v. Hunter, 586 So.2d 319 (Fla. 1991).
[1] The law of this state condemns outright any "police activity seeking to prosecute crime where no such crime exists but for the police activity engendering the crime." Cruz v. State, 465 So.2d 516, 522 (Fla. 1985), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985). As I understand it, it therefore astonishingly forbids the conviction of a judge or other public official who accepts a cash bribe at the instance of an undercover agent, unless the state shows he had done this sort of thing before and had thus been engaged in a "specific ongoing criminal activity." Cruz v. State, 465 So.2d at 522. O sting, here is thy death!
[2] This case is obviously in direct conflict with State v. Pham, 595 So.2d 85 (Fla. 1st DCA 1992); and Simmons v. State, 590 So.2d 442 (Fla. 1st DCA 1991).
[3] I also agree that the present facts constitute "objective entrapment" under Hunter, 586 So.2d at 319 and Cruz 465 So.2d at 522.
[4] new entrapment statute codifies the subjective test ... § 777.201. The objective test articulated in Cruz was abolished. Gonzalez v. State, 525 So.2d 1005 (Fla. 3d DCA 1988); State v. Lopez, 522 So.2d 537 (Fla. 3d DCA 1988). See also House of Representatives Committee on Criminal Justice Staff Analysis, June 27, 1989), at 177 ("This section overrules the Florida Supreme Court's decision in Cruz v. State, 465 So.2d 516 (Fla. 1985), which held that the objective test of whether law enforcement conduct was impermissible was in the discretion of the trial court'). [footnote omitted]
Gonzalez, 571 So.2d at 1349.
[5] The entire passage is as follows:

While the objective view parallels a due process analysis, it is not founded on constitutional principles. The justices of the United States Supreme Court who have favored the objective view have found that the court must `protect itself and the government from such prostitution of the criminal law. The violation of the principles of justice by the entrapment of the unwary into crime should be dealt with by the court no matter by whom or at what stage of the proceedings the facts are brought to its attention.' Sorrells [v. U.S.] 287 U.S. 435 at 457, 53 S.Ct. [210] at 218 [77 L.Ed. 413 (1932)] (Roberts, J., in a separate opinion). Justice Frankfurter also found that a judge's decision using the objective view would offer significant guidance for future official conduct, while a jury verdict offers no such guidance. Sherman [v. U.S.] 356 U.S. [369] at 385, 78 S.Ct. [819] at 827 [2 L.Ed.2d 848 (1958)] (Frankfurter, J., concurring in the result).
Cruz, 465 So.2d at 520 n. 2; see also State v. Anders, 596 So.2d 463 (Fla. 4th DCA 1992).
[6] The only thing which occurred between Cruz and Hunter was § 777.201.
[7] Cruz may be the only decision anywhere which precludes pure "virtue testing" type entrapment, Cruz, 465 So.2d at 522, even as a matter of judicially created common law. Every other of the small minority of courts which recognizes "objective entrapment" at all, contra United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); cases collected, 1 W. LaFave & A. Scott, Jr., Substantive Criminal Law § 5.2(b) (1986), requires far more than the mere approach to a previously unsuspected subject which is forbidden by Cruz, as an intrusion into "[im]permissible waters." Cruz, 465 So.2d at 522; See 1 W. LaFave & A. Scott, supra, § 5.2(c). It is thus even more anomalous that only Florida's due process clause  even though it is virtually identical to that of the United States and every other state constitution  has been found affirmatively to prohibit the practice as a constitutional imperative.
[8] With the possible exception of New Jersey, the other "objective entrapment" states, see supra note 7, regard it and subjective entrapment as mutually exclusive, choosing objective entrapment as the preferable but only entrapment defense. 1 W. LaFave & A. Scott, supra, §§ 5.2(c), (d). In sharp contrast, Florida's objective entrapment rule is an additional and distinct defense. Cruz, 465 So.2d at 520-21.
[9] See supra note 4.
[10] It may be true that while

`[s]ociety is at war with the criminal classes,' . .. [p]olice must fight this war, not engage in the manufacture of new hostilities.
State v. Hunter, 586 So.2d at 324 (Kogan, J., concurring in part, dissenting in part), quoting from Cruz, 465 So.2d at 522. Nevertheless, I did not previously know that the Florida Constitution embodied a manual of military tactics which restricts only one side, the state, to combat on an open field of battle against enemies who have already made their presence and identity known. The Redcoats lost the War of Independence largely because those who wrote the United States Constitution were not bound by such a rule.
[11] Query: Is Lewis, since he has now become known to the authorities and is thus presumably no longer protected by the Cruz-Hunter rule, subject to investigation for any future drug dealing on the ground that even a dog is entitled only to the first bite; or, because he was unconstitutionally discovered, is he immune from any subsequent prosecution as a "fruit of the poisonous tree"?
[12] See supra note 7.
[13] "Objective entrapment" is perhaps to be distinguished from the far more egregious behavior involved in cases like Kelly v. State, 593 So.2d 1060 (Fla. 4th DCA 1992), in which the police manufactured the crack cocaine the defendant was charged with possessing. See generally State v. Petro, 592 So.2d 254, 255 (Fla. 2d DCA 1991). I believe, however, that the underlying basis even of these decisions  as well as the "objective entrapment" cases  is not some never-articulated-because-inarticulable individual right not to be "improperly" encountered, investigated or prosecuted, but rather a determination that, as a matter of public policy, the courts should not be used to further unacceptable conduct. See State v. Glosson, 462 So.2d 1082 (Fla. 1985); Cruz; Molnar; see also Petro, 592 So.2d at 254. But cf. Hunter, 586 So.2d at 324-27 (Kogan, J., concurring in part, dissenting in part). On that basis, these decisions embody perfectly legitimate and, I believe, largely correct conclusions. But it is primarily the legislature which determines the public policy of the state. If  as Gonzalez holds, it actually did in this instance  the legislature statutorily disagrees with the courts on any of these issues, its decision should, at least ordinarily, be deemed the final one.

In other words, not everything of which judges disapprove, even strongly and conscientiously, is unconstitutional. Although they have the undoubted power, they should not disregard this principle by elevating sincerely-held, but not inarguable, judicial views into unchallengeable constitutional doctrine. Similarly, while a state court certainly has the authority to give its own constitution a more expansive or "liberal" reading than the Supreme Court's interpretation of the same or similar language in the Constitution of the United States, only an appropriate determination that the result is independently required by the state constitution itself would justify an actual decision to that effect.
[14] The holding is also at odds with the established law that a defendant may not complain about how his crime came to be discovered, Bush v. State, 369 So.2d 674 (Fla. 3d DCA 1979), or the manner in which he was brought to court. Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); Jones v. State, 386 So.2d 804 (Fla. 1st DCA 1980).
[15] not to make reply, Theirs not to reason why
Alfred Lord Tennyson, The Charge of the Light Brigade, st. 2 (1854). See Pacheco v. State, 485 So.2d 1379 (Fla. 3d DCA 1986) (Schwartz, C.J., specially concurring); Van Horn v. State, 485 So.2d 1380 (Fla. 3d DCA 1986) (Schwartz, C.J., dissenting).